## Complaint of ORMOND BEACH TRANSIT CO.

Railroad & Public Utilities Commission.

October 25, 1955.

Louis Ossinsky, Sr., Horn & Ossinsky, Daytona Beach, for Ormond Beach Transit Co.

Thomas T. Cobb, Cobb & Cole, Daytona Beach, for city of Daytona Beach.

Chairman WILBUR C. KING and commissioners JERRY W. CARTER and ALAN S. BOYD participated in the disposition of this case.

BY THE COMMISSION.

The commission held a public hearing on August 20, 1954 in the city hall, Daytona Beach, for the purpose of receiving such testimony as would be helpful in determining whether the Volusia County Kennel Club is in fact situated with the suburban territory adjacent to the city of Daytona Beach.

On June 21, 1954 the city inaugurated passenger bus service to the kennel club. Ormond Beach Transit Co., holder of certificate of public convenience and necessity #306, is authorized under such certificate to serve the territory where the club is located.

On June 30, 1954 the commission considered the verbal reports of its motor transportation and legal departments regarding the club's exact location with respect to the city limits, and took judicial notice that it is situated in the suburban territory adjacent to the city.

After the transit company on July 26, 1954 filed a petition requesting that our action be rescinded and that it be given an opportunity to be heard on the question whether the club is in fact located within such territory we designated an examiner to hold a public hearing to receive testimony from the parties which might be helpful in the determination of the question, directing him to prepare a report and announcing that upon the filing thereof we would hear oral argument on the merits of the case and any jurisdictional questions that might be involved.

On February 11, 1955 the examiner filed his report developed from the testimony and exhibits of the transit company and the city at the public hearing limited to the issue whether the club was situated within the suburban territory adjacent to the city. On August 24, 1955 the commission heard oral argument by the parties. After careful consideration of the testimony and exhibits, the examiner's report and oral argument, the commission finds—

1. That part of the city limits which is relevant to a determination of this issue begins at the intersection of U. S. highway 92 and Lake Shore Drive; then proceeds in a westerly direction along the northerly right of way of U. S. highway 92 to the west line of the Samuel Williams Grant; then proceeds in a southerly direction along the west line of the Samuel Williams Grant to an intersection with the south line of what is known as the Old DeLand Road to the section line.

2. The club is located outside of but contiguous to the west boundary line of the city limits.

3. The east line of the club property is one and the same as the west boundary of the city limits, said line being the west line of the Samuel Williams Grant.

4. The character of the development beyond the city limits extending from the intersection of U. S. highway 92 and Lake Shore Drive for a depth of 400 feet along the northern right of way of U. S. highway 92 in the direction of the club to the west line of the Samuel Williams Grant (which line is the east line of the club's property) is as follows—(a) For the first 1635 feet there is a large saw grass pond undeveloped, then one building housing

three businesses, then a trailer park, then two drive-ins. (b) For the next 6400 feet there are no improvements, a barbed wire fence is in place along the right of way and there are several billboards and one cattle shute in operation. (c) For the last 500 feet the improvements consist of a night club, a motel and a tombstone manufacturing operation.

5. The character of the development beyond the city limits extending for a distance of five miles west, north and south from the club's property lines consists mostly of piney woods with no development except a dairy, a picnic ground established by the state highway department and an isolated farmhouse or two.

6. The area beyond the city limits surrounding the club is classified as a rural delivery route by U. S. postal authorities because it does not meet a primary qualification for city delivery service which is that it must be 50% improved with houses.

7. The territory outside the city limits surrounding the club is not continuously built up by residential and business developments but consists principally of piney woods acreage suitable only for farming purposes.

The above findings of fact concerning the club's physical relationship to the city limits and the surrounding terrain must be considered with respect to two portions of chapter 323, Florida Statutes 1953.

The first is found in section 323.29, as follows—"There shall be further exempted from the provisions of this chapter and from commission jurisdiction and control, persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory, * * * where such business of carriage is regulated by the legislative body of such cities or towns."

The other pertinent portion is found in the definition section, section 323.01(12), as follows—" 'Suburban territory' as used in this chapter means that area lying immediately outside and contiguous to the corporate limits of any municipality which is continuously built up and developed and used as residential or business property as distinguished from rural property."

Applying the physical facts to the definition which the legislature has set forth to assist us in determining matters of this type, we conclude that the kennel club is "immediately outside and contiguous to" the city limits of Daytona Beach. There is no question about the dog track, the night club, motel and tombstone manufacturing company constituting "business property" within the terms

of the legislative definition. The east line of the club's property is one and the same as the west city limits, which is certainly "contiguous.".

The oval racetrack is less than 100 feet from the corporate lines. The distance from the south half of the concrete pavement on U. S. highway 92 where the west city limits line crosses to the center line of the east entrance to the dog track is 671 feet. The measured distance from the west city limits where it intersects the south line of the pavement of U. S. 92 to the center line of the second track entrance, which is actually in the middle of the track proper, is 1002 feet. From the westernmost boundary of the city limits to "Motel 92" is 700 feet, to "Club 92" is 800 feet. The "Bell Motel" is about even with the west line of the club property.

We conclude that the city may transport passengers by bus between the club and the city without a certificate of public convenience and necessity from this commission authorizing such transportation. The operation falls clearly within the exemption stated in section 323.29. The complaint is dismissed.